# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF ARKANSAS

US DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FILED

NOV 0 3 2025

By_____
Ronald E. Dowling
Deputy Clerk

| | |
|---|---|
| **NOEL VINCENT THOMAS** | ) |
| **PRO SE LITIGANT** | ) |
| **PLAINTIFF** | ) CASE No. 5:25-CV-5222 |
| **- vs –** | ) |
| **WAL-MART INC.,** | ) **JURY TRIAL DEMANDED** |
| **KEVIN BOLEN, LISSET CHAO** | ) |
| **JOHNATHAN BAKER,** | ) |
| **RUBENSTEIN LAW FIRM,** | ) |
| **IRWIN AST LAW FIRM,** | ) |
| **NICHOLE GARCIA,** | ) |
| **DEFENDANTS.** | ) |

## COMPLAINT WTH DEMAND FOR JURY TRIAL

[1] Plaintiff, Noel Vincent Thomas, brings this action for the violations of state and federal laws against Wal-art and its employees and Rubenstein and Irwin Ast law firms and their employees.

## JURISDICTION AND VENUE

[2] This action is for the claims of fraud, conspiracy, negligence and race discrimination, which violates Plaintiff's due process rights, access to the court and equal protection of the law pursuant to **28 U.S.C § 1331** and the **U.S. Constitution 5th and 14th Amendments**.

[3] Under the constitutional laws does this action arise and this Court has jurisdiction over civil matter where the citizens are of different states pursuant to **28 U.S.C. § 1332**.

[4] This venue is proper in the United States District Court for the Western District of Arkansas because some of the alleged Defendants resides in Benton, Arkansas and the business and transactions are native to this jurisdiction pursuant to **28 U.S.C. 1391(b)(1)**.

## PARTIES INVOLVED

[5] Plaintiff resides in Tampa, Florida and is a U.S. military veteran who is currently retired and living in low-income housing under the HUD-Vash program.

[6] Defendant Wal-Mart is a nationwide retail department store headquartered in Benton, Arkansas.

[7] Defendant Kevin Bolen is a case manager for Wal-Mart claims services.

[8] Defendant Johnathan Baker is a case manager for Wal-Mart claims services.

[9] Defendant Lisset Chao is a Wal-Mart associate working at the location of the incident.

[10] Defendant Rubenstein is a law firm practicing in the State of Florida

{2}

[11] Defendant Irwin Ast is a law firm practicing in the State of Forida

[12] Defendant Nichole Garcia is a paralegal working for Irwin Ast law firm

## STATEMENT OF CASE

***Wal-Mart failure to properly assist Plaintiff and to meet its obligations***.

[13] On December 16, 2023, Plaintiff was shopping at a Wal-Mart store located at 8220 N. Dale Mabry Hwy, Tampa, Florida 33614, whereupon Plaintiff entered the produce section looking for a particular product and asked a Wal-Mart associate for the location of that item, who was then at that time, stocking the shelves in the fruit and vegetable section of the store *(See E-1)*.

[14] Due to there being a language barrier between both parties, the Wal-Mart associate did not immediately understand Plaintiff request but eventually perceived the conveyed inquiry and started to escort Plaintiff to the general location of the afore-stated product.

[15]  Once the Wal-Mart associate came near to the area where the sought-after item was found, he straight away pointed out the product and Plaintiff begun to walk in that direction and as soon as Plaintiff step around the corner of a vegetable stand, he slipped and fell on what appeared to be some type of reddish smashed fruit or vegetable that was most likely dropped by the same Wal-Mart associate who was stocking the shelves in that area.

[16] And since the Wal-Mart associate did not speak English he immediately called, whom Plaintiff believe was the store manager and apparently was told to observe Plaintiff action and clean up the area but due to the nature of the fall, where Plaintiff believe he hit his right arm and shoulder on the corner of a produce

stand and sustained what is suspected to be a serious injury because Plaintiff's whole right arm went completely numb for a few seconds, which caused great panic and disarray.

[17] Once Plaintiff stood up from the slip and fall accident, he noticed the Wa-Mart associate immediately making a call, Plaintiff approached that individual and asked him to contact the store manager, in which he complied and Plaintiff filed claim, number L3389013, at the Wal-Mart store location listed above, on December 16, 2023 *(See E-1)*.

***The claims services attempted to hinder Plaintiff from taking legal action.***

[18] Plaintiff received a phone call from a Wal-Mart claim service case manager, named Kevin Bolen on December 18, 2023, who left a voice message, but Plaintiff did not respond because he refused to communicate legal issues over the phone.

[19] Then Plaintiff received an email from Mr. Bolen on December 18, 2023, who wanted to discuss the incident by way of telephone so, Plaintiff immediately sent him an email on December 20, 2024, with attached medical documents, and explaining the fact that Wal-Mart had more detail information about the accident than Plaintiff because they have the complete video footage of Plaintiff's activities throughout his visit to that particular store and they have the report of the Wal-Mart associate who witnessed the incident and they have the store manager's accident and inspection reports and further Plaintiff sent Mr. Bolen a copy of the emergency room medical summary report so, there was very little information that Plaintiff could offer to Wal-Mart that would help expedite a reasonable resolution for the matter *(See E-2,3,4)*.

{4}

[20] Then on December 22, 2023, Mr. Bolen called Plaintiff a second time regarding the accident that happened at the Wal-Mart store mentioned above, so Plaintiff sent a second email to Mr. Bolen on December 23, 2023, explaining that he needed a little time to seek medical advice to determine the extent of the damage and that phone calls were an unreliable source of communication *(See E-2,3)*.

[21] Plaintiff received letters date February 22, 2024, and March 7, 2024, from Mr. Kevin Bolen asserting that Wal-Mart had reached a decision on the claim and wanted Plaintiff to contact Wal-Mart claims services as soon as possible but failed to acknowledge what type of decision was rendered or what was the purpose of any further communication if a final conclusion had been reached *(See E-5,6)*.

[22] Plaintiff sent an email to Mr. Bolen on April 24, 2024, questioning the reason behind why Wal-Mart would send Plaintiff two similar letters, in February and March alleging to have reached a decision on Plaintiff's claim and yet, needing to discuss the issue with him which clearly demonstrated prejudice against him, by not being forthright in their communications to resolve the issue *(See E-3,4)*.

[23] And further Plaintiff told Mr. Bolen that any communications must produce some type of paper trail, and phone calls would not suffice as a means of contact and in addition Plaintiff stated to Mr. Bolen that he was experiencing great difficulty with the Veteran Administration (V.A.) in obtaining the necessary medical care and that Plaintiff was anticipating pursuing legal action against them for this failure *(See E-3,4)*.

[24] In the Plaintiff's April 24, 2024, email to Mr. Bolen, he informed him of the fact that all future communications must be through documentation and not phone

calls, and that particular request caused Wal-Mart to temporarily and intentionally cease all potential lines of communication and that specific conduct demonstrated that Wal-Mart was willfully stereotyping Plaintiff and refused to seriously resolve the matter.

[25] Then on September 3, 2024, Plaintiff received an email from Wal-Mart case manager, Johnathan Baker explaining that the Plaintiff's claim had been transferred to him and that he wanted Plaintiff to contact him as soon as possible but according to that email, Mr. Baker intentionally and deceptively stated that there was no medical payment provision and therefore they could not make any payments to health providers, so all bills must go through Plaintiff's insurance or be billed as self-paid *(See E-7,8)*.

[26] Then Mr. Baker asserted in the September 3, 2024, email that he attached a few letters to such, to be evaluated by Plaintiff and once the treatment plan was completed, Wal-Mart needed Plaintiff to submit all medical records and bills that he wanted Wal-Mart to consider and once reviewed, an offer could be made *(See E-7,8)*.

[27] In that email Mr. Baker only sent one letter, and it did not address or resolve any issues, it only stated that Wal-Mart wanted to speak to Plaintiff at his earliest convenience and settle the matter in a timely manner yet, Mr. Baker refused to attach any resolution to the above stated email but was rather insisting that Plaintiff communicate with him over the phone, which means that Wal-Mart was not looking for a just settlement but was attempting to force Plaintiff to forfeit his rights to take any legal action against Wal-Mart by consenting to incriminating evidence provided over the phone *(See E-9,10)*.

[28] And further Mr. Baker alleged that Wal-Mart had no medical payment provisions, and that Plaintiff was required to submit all medical records and bills for Wal-Mart to review, for the consideration of any offer, but Plaintiff notified Mr. Bolen of the fact, that he was attempting to receive medical care through the V.A. and that those services were not presently being provided *(See E-2,3,4)*.

[29] Therefore, Wal-Mart knew that there were no medical records or bills that Plaintiff could have presented to Wal-Mart that could have changed the outcome because first, medical care for most veterans at the V.A. is basically free and secondly Plaintiff is not trying to recover payment for medical bills but rather damages from the negligence of Wal-Mart because Plaintiff slipped and fell on their property, and that he is 65 years old and therefore, no medical records are needed to be produce to determine an estimated cost of damages for those types of injuries for a person of age and this is why Wal-Mart said from the beginning that they had reached a decision in the matter because they understood the nature of the injuries and the long-term effects of such.

[30] Then on September 4, 2024, Plaintiff sent Mr. Baker an email reminding him of the fact that both Mr. Baker and Mr. Bolen claimed that Wal-Mart had decided on the matter, and then Plaintiff received a response on the same day, where Mr. Baker alleged that the decision was being made by Wal-Mart to work for a resolution for reasonable related and medically necessary expenses.

[31] In which Wal-Mart knew that Plaintiff did not have any such expenses nor was any being accumulated, because he was being treated at the V.A. and further no decision could have been logically achieved, if Wal-Mart was still working on a resolution in the matter, so it appears that Mr. Baker was using deceptive and racist

{7}

language to try and cover up the fact that Wal-Mart had reached an earlier final decision but later concluded that it was feasible to hinder Plaintiff from gaining any kind of compensation *(See E-9,10)*.

### *The Veteran Administration (V.A.) refused to provide medical care*.

[32] Due to the Veteran Administration (V.A.) refusal to provide Plaintiff with the necessary medical care that was sought after, Plaintiff was forced to demonstrate that the V.A. illegal actions had directly affected any negotiations with Wal-Mart and in turn, the intentional failure of Wal-Mart to open up any legitimate points of contact to work with Plaintiff to achieve the best possible solution to the problem in a timely manner.

[33] On December 17, 2023, Plaintiff visited the James A. Haley V.A. hospital with an arm and shoulder injury from a slip and fall accident that happened the day before at a Wal-Mart store, and the medical team in the Veteran Administration (V.A.) emergency room (E.R.) took x-rays of the damage area, apparently looking for broken bones but was unable or unqualified to give any diagnosis of any nerve damage and this was Plaintiff major concern because, when he fell, the whole right arm became numb and that was when Plaintiff knew that he had a potentially serious problem developing from that accident.

[34] The E.R. doctor gave Plaintiff basic information relating to the injury and instructed him to contact the V.A primary care physician as soon as possible, in which Plaintiff did, and requested for the scheduling of an appointment to see a neurologist to determine the extent of the damage but unfortunately the V.A. primary doctor refused to comply with Plaintiff's demand and told him that he would have to learn to live with that type of pain because there was no remedy for

those kinds of injuries, as if the V.A. primary doctor was skilled in the field of neuroscience and was able to make that decision without a proper examination or equipment and this misconduct can be verified by Plaintiff's medical records, which will prove that the action of the V.A. primary doctor was racially motivated and medical malpractice and intentional misdiagnosis.

[35] First, it was a total insult to Plaintiff to suggest that he would have to live with a condition that was emanating from an unknown area and that it might be causing serious health issues and yet, the V.A. primary doctor was comfortable giving this misguiding information to a patient whom no extensive testing had been performed at that point in time, so the best solution to that issue would have been to send the patient to a specialist to establish a reference point to begin treatment.

[36] And further since Plaintiff was approaching 65 years of age, and all medical persons know and understand that age is a major factor in slip and fall accidents, therefore Plaintiff condition should have been prioritized and expedited due to the potential danger of that situation but unfortunately Plaintiff is still seeking proper medical assistance.

[37] Secondly the main duty of any doctor is to provide the proper and necessary care for the patient, so if Plaintiff requested to the primary physician, that he needed to see a particular specialist and that the injuries and medical issues were beyond the scope and skills set of knowledge of that said doctor, then it was required by law that the health care provider comply with Plaintiff's instructions and not argue with him and prescribe drugs for medical conditions that they had no knowledge of because that would be considered medical malpractice with

{9}

malicious intent to cause grave bodily harm.

[38] As stated at the start of this complaint, on December 17, 2023, Plaintiff visited the V.A. emergency room with an injury caused by a slip and fall accident that occurred at a Wal-Mart store the day before, then shortly afterward Plaintiff contacted his primary doctor to request a consultation with a neurologist, who in turn refused to grant that petition, so Plaintiff made a second appointment to see his primary doctor due to the pain level intensifying and yet again this request was declined and was told, if the pain worsen, return to the E.R. for further assistance, therefore, Plaintiff complied with the primary doctor's instructions and went to the V.A. emergency room, and the first question that the E.R. doctor asked Plaintiff was, what did he want them to do and made that statement several times, which was insinuating that they were not going to do anything, and Plaintiff's medical records will show and prove that nothing was done.

[39] And the reason why the E.R. doctor was behaving that way, was because once Plaintiff arrived, he immediately requested that they schedule an appointment for him to see a neurologist to circumvent the unwillingness of the primary doctor to assist with Plaintiff's medical needs but instead of helping him, this E.R. doctor started giving his opinion of the problem by stating that Plaintiff had a cervical nerve injury, but this was a point of disagreement because Plaintiff did not fall on his head or neck but rather fell on his shoulder, therefore it appears to be a brachial plexus nerve issue and Plaintiff is quite sure that the E.R. doctor wrote this opinion in the medical records, which amount to giving an intentional misdiagnosis.

[40] The complaint was about the ability to access the proper and necessary medical care that is available to all individuals after encountering serious injuries

{10}

and the ability to hold Wal-Mart and the V.A. accountable for their failure to perform their duty and to provide a safe and secure environment for customers or patients to receive proper services, so that the visitor would be able to effectively navigate within system or on their premises.

***Plaintiff filed complaints against the V.A. for denial of Proper medical services.***

[41] After exhausting all remedies of attempting to see a neurologist Plaintiff filed a complaint with the Patient Advocate Office on January 18, 2024, and they reached out to Plaintiff with the supposed intention of resolving the ongoing problem, but they failed to set an appointment to see a neurologist and on January 22, 2024, Plaintiff received a phone call from the James A Haley V. A. hospital and they left an extension number to a H-pact social worker named Cris Carson, whom Plaintiff eventually spoke with but he was unable to assist Plaintiff with his problem, therefore, the V.A. was purposefully giving misdirecting information, which was causing serious delays in Plaintiff's medical care and the ability to settle his civil matter with Wal-Mart.

[42]  Then on January 23, 2024, Plaintiff spoke with the Director of James A. Haley, V. A. hospital, emergency room, Doctor Timothy D. McGuirk for about 30 minutes and he put in a request for a consultation with the neurology department and this very act was proof positive that the V.A. hospital E.R could have taken this action from the very beginning but racism and classism prevented this from occurring and this failure was a clear form of medical negligence and retaliation.

[43] On January 26, 2024, Plaintiff sent a complaint via certified mail to the V.A. Joint Commission but did not receive any kind of response, not even the acknowledgement that the information was delivered. Then Plaintiff was contacted

{11}

by the V.A. hospital by way of phone to schedule an appointment with the neurology department, which was set for March 20, 2024, which was several months away, and this further endangered Plaintiff's health condition and delayed any or all Plaintiff's legal options against the business responsible for his injuries.

[44] Once Plaintiff arrived at his neurology appointment, they failed to perform any substantive tests to determine the extent of Plaintiff's damage but only conducted stretching exercises, further detaining any real medical resolution and told Plaintiff that they were going to schedule another appointment, setting it for the date of April 10, 2024, to administer some type of electrical nerve examination, to test the responses of the nerves, which should have been initiated months prior.

[45] Then on April 10, 2024, Plaintiff attended the scheduled appointment, only to discover that it was not with the neurology department to conduct the above stated test but rather it was with Plaintiff's primary doctor, which was purposefully wasting his time and obstructing needed medical services.

[46] Plaintiff asked the nurse what was the reason for that appointment and he looked into Plaintiff's medical file to see if there were notes stating the purpose of the appointment but could not find any, so when the primary doctor came into the room, both parties asked the question about the appointment and the primary doctor stated she did not know the purpose of the meeting, and this very behavior was medical negligence, retaliation and conspiracy.

[47] The real problem with the afore-mentioned appointment is the fact that there was no blood work required prior to the meeting and the first thing that the primary doctor asked Plaintiff about was the results of blood work taken in August of 2023, which had already been discussed at Plaintiff's annual checkup in October of 2023.

{12}

[48] And the issue was further reviewed in December of 2023, and January of 2024, so this was proof that Plaintiff primary doctor and the neurology department were conspiring to hinder Plaintiff's civil actions and to deny him medical services and to retaliate against Plaintiff for circumventing their authority by going directly to the V. A. emergency room director to obtain a consultation to see a neurologist.

[49] On April 13, 2024, Plaintiff filed a complaint with the V.A. Office of Inspector General (OIG) and on June 12, 2024, Plaintiff received an email response from the afore stated agency, which asserted that their mission was to detect and prevent fraud, waste and abuse within V.A. programs and gave four areas of review, which are as follows: 1) V.A. related criminal activity; 2) systemic patient safety issues; 3) Gross mismanagement; and 4) Misconduct by senior V.A. officials

[50] And further stated in the above-mentioned email was the assertion, that because they received more complaints than the OIG has the resources to review in depth, they limit investigative effort to issues that have the most serious potential risk to veterans and the V.A. operations, which is called selective investigations and violates all complainants due process rights because there is no check and balance system in place to determine who makes those decisions and for what purpose and black people will be selected last every time.

[51] Based on the records and the actions of the neurology department and Plaintiff's primary doctor, it appears that they purposefully delayed his medical services, falsified medical records, gave a misdiagnosis of Plaintiff's condition and provided him with inaccurate information for retaliatory reasons.

[52] And according to the neurology department's assessment of Plaintiff's nerves examination, there was no evidence of right branchial plexopathy or a right

{13}

cervical radiculopathy but did discover some damage to the right ulnar neuropathy across the elbow and this evidence proves that the V.A. officials intentionally skewed information to hinder Plaintiff from obtaining a civil settlement for his injuries but apparently none of these violations met the OIG reviewable standard.

[53] The actions of the V.A. have been to delay Plaintiff's medical treatment and thereby hinder his lawsuit for retaliatory purposes and Wal-Mart's elusive words of asserting that a decision was made on Plaintiff's claim, while at the same time refusing to respond in writing to the email requests asking for clarity on that determination, thereby insinuating that Wal-Mart perceived aim and goal was to force Plaintiff into some type of verbal agreement that would not have been beneficial to him but would help facilitate and mitigate all their civil liability.

[54] And due to Plaintiff's focusing his attention on the V. A. for almost year, attempting to compel them into providing the necessary medical services that was required, Plaintiff was unable to effectively negotiate with Wal-Mart, first due to their refusal to document any communications and secondly because Wal-Mart had previously stated that the matter was resolved without notification of that settlement.

[55] And as stated above the V.A. falsified medical records, so Plaintiff forced them to send him to a private neurologist, of which Plaintiff obtained those results, but Plaintiff was also sent to TGH imaging for a MRI, which totally refutes the V.A. version of their electromyography findings and Plaintiff will present this evidence at the proper time.

***V.A. and Wal-Mart intentionally caused delays in the legal process.***

{14}

[56] Plaintiff, believes that Wal-Mart should be totally responsible for the injuries sustained in the slip and fall accident that occurred on their property and since the V. A. falsified medical records and Plaintiff was propel into filing multiple complaints with several federal agencies concerning such, and is planning future civil action, then all V. A. medical records related to this issue are suspect and are not 100% reliable.

[57] Wal-Mart examined the video footage of Plaintiff's accident, and they knew the degree of their liability, but Plaintiff was quite observant after his accident and the first thing he noticed was the object that Plaintiff slipped on, which was some type of reddish fruit or vegetable and no product like that was located in that area, so the logical conclusion was that the Wal-Mart associate who witnessed the incident was the cause of the accident because he was stocking all the produce shelves *(See E-1)*.

[58] And further if Wal-Mart attempts to claim that the video footage of the incident has been overwritten, then that would be a futile argument because that evidence was sent to the claim's services and the Wal-Mart home office, and this is normal operating procedures, therefore the video cannot be destroyed *(See E-21,22,23)*.

***Plaintiff initiate civil action against Defendants.***

[59] Plaintiff's legal case was initiated on October 25, 2024, and Irwin Ast law firm entreated Plaintiff for personal information and medical treatment documentation, in which he provided, and Plaintiff explained that the Veteran Administration (V.A.) refused to provide further treatment, and Plaintiff was told that Irwin Ast law firm would send him to their medical personnel in the December

{15}

16, 2024, email but corruption and racism prevented such from happening *(See E-11,12,13,14)*.

[60] Further in the December 16, 2024, email, after two months without any contact, Mrs. Nichole informing Plaintiff that she was representing him and asked about an orthopedic that was recommended by the V.A. and Plaintiff told her that the V.A. refused to provide medical care and further stated that her law firm said that they would arrange those services *(See E-12,26)*.

[61] Plaintiff continued telling Mrs. Nichole in the above-mentioned email that he believed that her law firm was intentionally delaying the process of assisting Wal-Mart by not filing a lawsuit knowing that December of 2025 was the expiration date to initiate the action and Plaintiff also requested the status of the case but was denied his demand.

[62] Mrs. Nichole responded to Plaintiff's email by claiming that the provider that they originally attempted to refer him to was unable to treat Plaintiff due to the date of the accident and the time that Plaintiff signed with Irwin Ast law firm but failed to convey this information to Plaintiff until he requested such *(See E-12,26)*.

***Conspiracy of legal counsel to work with Wal-Mart to purposely interfere with a potential lawsuit.***

[63] The Irwin Ast law firm acknowledged the fact that they were in communication with Wal-Mart and asserted that no records or bills had been requested, but refused to relinquish Plaintiff's case files and they clearly understood that Plaintiff had sent them medical documents in the October 25, 2024, text message which was sufficient to win the lawsuit, and that is why in their case evaluation they determined that it was a good possibility of success but after

{16}

Plaintiff requested his case files, Irwin Ast law firm decided to terminate their representation without any logical reason, other than racism and the above stated one *(See E-12,13,16)*.

[64] Then on February 5, 2025, Plaintiff received a text message from Mrs. Nichole, asking him once again about the V.A. medical treatment plan, which demonstrated a lack of interest in the case or incompetence *(See E-12,13)*.

[65] And additionally, Plaintiff asked her what was the status of his case or case files, because of the expiration of the two-year statute of limitations window to file the action was closing and Plaintiff said that if Irwin Ast law firm was not able to negotiate some type of settlement in a timely manner, then maybe they should drop the case, and they did just that, but in the most unethical way because there was a legal process that must be followed to terminate cases *(See E-12,13,16)*.

[66] First, Plaintiff did not request that Irwin Ast law firm terminate the case and secondly, that law firm conducted a case evaluation at the beginning and calculated that the case was worth investing their resources into, so why would Irwin Ast law firm discontinue a profitable venture, unless they were conspiring and assisting Wal-Mart in attempting to frustrate any future civil litigation for greater profits.

[67] After not receiving any response from Irwin Ast law firm concerning Plaintiff's last text message to them, Plaintiff then sent them a summary of the known actions in his case via text message on February 14, 2025, and asked Irwin Ast law firm, once again to send him a copy of his case files, which included all of the release of information documents, as soon as possible but still not receiving any type of compliance *(See E-14)*.

{17}

[68] Then Plaintiff called Irwin Ast law firm on February 24, 2025, and on February 27, 2025, and still at that moment Plaintiff did not have possession of his case file documents. Therefore, Plaintiff sent them the final and definite inquiry relating to his case files on February 28, 2025, because Plaintiff had already forwarded to Irwin Ast law firm his personal documents and medical information, which they had not returned nor the release of information documents, nor a list of all the activities between their law firms and Wal-Mart and any other document that showed the progression of the case *(See E-17)*.

[69] Plaintiff received a letter dated February 26, 2025, which asserted the alleged reason for terminating his case, which was for the stated reason of, after reviewing Plaintiff's entire file Irwin Ast and Rubenstein law firms regretted advising Plaintiff that they determined that it was not feasible for their firms to pursue Plaintiff's claim against Wal-Mart or any other party in connection with Plaintiff's December 16, 2023, accident, and based upon that statement alone it represented legal malpractice, racism and fraud *(See E-1)*.

[70] First, Irwin Ast law firm claimed that they reviewed Plaintiff's entire file and made the decision to close his case but the only known documents in their possession are the ones that Plaintiff sent to them on October 25, 2024, *(See E-11,17)*. And according to Mrs. Nichole's statement made in her December 16, 2024, text message, she declared that no lawsuit had been filed and that they open a claim with Wal-Mart and no records or bills had been requested *(See E-13)*.

[71] This means that Irwin Ast law firm's February 26, 2025, letter is a false and fabricated document designed to attempt to conceal the fact that they were aiding and abetting Wal-Mart in causing the statute of limitations to expire and using the

{18}

pretext that Irwin Ast law firm reviewed Plaintiff entire records and found information that was devastating to the outcome of the case yet refused to provide Plaintiff with copies of that documentation *(See E-16)*.

[72] And secondly, there is nothing in Plaintiff overall medical records that could or would change the prospect of success or failure in this case because Plaintiff do not have a medical history and if they have access to such, then this is already known, therefore, Irwin Ast law firm is perpetrating a fraud against a client because if they have requested my medical records and gave them to Wal-Mart then this is a breach of the HIPAA regulations and the confidentiality laws.

### *Plaintiff was represented by two different law firms without any contact.*

[73] And further stated, in the above-mentioned letter, which Irwin Ast and Rubenstein law firms sent to Plaintiff, was that they both agreed to drop the case, which is a conflict of interest because the Rubenstein law firm was the initial point contact and they told Plaintiff that his case did not fit their law practice profile and referred Plaintiff's case to Irwin Ast law firm but retained a percentage of control over the case, which means Plaintiff had two law firms representing him at the same time and neither can produce any records of communication between any of the parties, other than Mrs. Nichole, whom Plaintiff believed at the time to be a paralegal posing as a certified attorney *(See E-16,18)*.

[74] In the above-mentioned letter, it was signed by Irwin Ast, which means he was the alleged main representing attorney but has never personally, contacted Plaintiff but has relegated the duty to Mrs. Nichole, whom Plaintiff had the Florida Bar ACAP run a lawyer's history of Irwin Ast law firm and was only able to find two male attorneys working there, so Mrs. Nichole had to be a paralegal who was

{19}

claiming to represent Plaintiff and giving legal advice *(See E-12,26)*.

[75] And finally Irwin Ast law firm stated in the February 26, 2025, letter that Plaintiff should keep in mind that the statute of limitations are usually two years or shorter and that they did not evaluate the statute issue, and this is proof of a conspiracy between Wal-Mart and Irwin Ast law firm because in all Plaintiff communications with the law firm, they has been focus on the statute of limitations and any attorney who specializes in negligence and failed to evaluate the laws related to such can be charged with incompetence or fraud *(See E-16)*.

[76] As Plaintiff stated earlier, the law firm of Rubenstein was the first point of contact, and they told him that his case did not meet their basic acceptable standard of requirements, for them to litigate Plaintiff's concerns and rejected the case and referred it to Irwin Ast law firm. Then on October 25, 2024, Plaintiff received a text message from an assistant of the law firm of Irwin Ast, speaking in the first person, with the pronoun word of I, which meant they were acting independent of any supervisory regulations and was requesting that Plaintiff send them personal documentation, medical records and complete the release of information documents *(See E-11)*.

### *Plaintiff's attorneys' illegal misrepresentation of their law firm.*

[77] On February 27, 2025, Plaintiff called the law office of Irwin Ast to request the name of the person who was supposedly handling his case and who had sent Plaintiff an email, informing him that she was representing him, and stated her alleged name as Mrs. Nichole, with no last name attached, but the individual whom Plaintiff spoke with on the above stated date said that Irwin Ast was the attorney representing him, which was impossible because there had never been any type of

{20}

communications between either party, which means that Irwin Ast law firm had perpetrated a fraud against Plaintiff by receiving private information from him and sharing such with Wal-Mart, by way of their paralegal *(See E-11,12)*.

[78] And further in Plaintiff's phone call on February 27, 2025, Plaintiff requested the full name of Mrs. Nichole and was denied such, and he also asked for the case files, and was told by this person that Irwin Ast no longer represented Plaintiff, and this was when Plaintiff demanded a reason of why he was not notified in a timely manner and the person on the phone said that a letter was mailed out and that Plaintiff should receive it soon, and further Irwin Ast law firm called Plaintiff back on the same day for an unknown reason at 6:41pm after illegally terminating his case, therefore Plaintiff did not answer the call.

### *Plaintiff filed a complaint against his counsel with the Florida Bar Association.*

[79] And once Plaintiff received the release of information documents from Mr. Ast' assistant on October 25, 2024, he noticed on the fee sharing document, that he was being represented by two different law firm and one of them being Rubenstein who had told Plaintiff that his case did not fit their law firm profile *(See E-18)*.

[80] So, in that instance, Plaintiff had two separate legal entities representing him with possible conflicting interest and who were attempting to negotiate on Plaintiff's behalf without either party making contact or communicating directly with him at any point during their retainment, which is a violation of moral, civil and criminal laws which include, racial discrimination, legal malpractice, misrepresentation and perpetrating fraud against a client *(See-E-18)*.

[81] According to *Rules Regulating Florida Bar (RRFB) 4-1.4(a)(1)(2)(3)*, which requires the representing counsel to consult with the client concerning the matter of

{21}

how to accomplish his objectives and to keep the client informed about the status of the case, and this Rubenstein and Irwin Ast law firms failed to comply with because they never directly consulted with Plaintiff on any level of communications.

[82] And to confirm the afore stated violations is the fact that Mrs. Nichole Garcia never used her last name or title in any of the correspondences with Plaintiff or Wal-Mart, until March 20, 2025, in an email sent to Plaintiff where she clearly identified her full name and legal position and properly used the plural pronouns of, us we, and our, indicating that she was under the authority of a supervising attorney *(See E-19,20)*.

[83] But prior to the above-mentioned date Mrs. Garcia failed to use the proper identifying language, especially in the October 25, 2024, text message where she stated the words "I need the following" not the law firm or Mr. Ast needed that information but was speaking independent of a supervising attorney *(See E-11,12,13,14)*.

[84] Then on December 16, 2024, Plaintiff received a text message from Mrs. Nichole Garcia misrepresenting her legal position by claiming to be handling Plaintiff's case and giving legal advice outside of Mr. Ast supervision *(See E-12)*.

[85] And on February 5, 2025, Mrs. Nichole Garcia sent Plaintiff a text message speaking independent of the supervising attorney by saying she was following up to see how Plaintiff's treatment plan was going when in reality Mrs. Garcia already knew that Plaintiff did not have medical services because Plaintiff told Irwin Ast law firm that the V.A. refused to treat him and that Irwin Ast law firm was supposed to have arranged for medical care *(See E-11,12,13,14)*.

{22}

[86] So, it appears that Mrs. Garcia had been illegally representing both Rubenstein and Irwin Ast law firms, thereby violating ***RRFB 4-1.4(b)***, titled; Duty to explain matters to clients; which states, a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. This process has never occurred because there have not been any direct established lines of communication with either of the above-mentioned law firms and no documentation can be produced to refute that fact.

[87] On November 5, 2024, a person from Irwin Ast law firm who appeared to be Mrs. Garcia, based upon the displayed email address on the document, sent a letter to Wal-Mart Claims Services, informing them that they had been retained by Plaintiff and that information was needed concerning Wal-Mart's liability insurance and that Wal-Mart could contact that individual at nichole@astlawfirm.com, *(See E-21)*.

[88] The above-mentioned letter, and the contents within itself is quite suspect because, first, why would a competent lawyer who is in the middle of negotiating terms of a settlement with the opposing party give secondary contact information, instead of a direct source of contact therefore, Plaintiff believe that the person who was parleying with Wal-Mart was Mrs. Nichole Garcia due to her email address being utilized because on all Irwin Ast law firm documents and website, the main email address is IRWIN@ASTLAWFIRM.COM *(See E-16,18,21)*.

[89] Plaintiff stated in the initial complaint to Irwin Ast law firm that they were perpetrating fraud and to prove this allegation is the fact that Mr. Ast retained a lawyer to represent him in the matter of the Florida Bar investigation, which is not a legal process but rather a moral, obligatory and duty-bound complaint process, so

{23}

why would legal counsel be necessary if neither representing law firms violated any laws?

[90] The fact of the matter is Mr. Ast does not want to officially put his words on any documents due to fear of perjury and Plaintiff will present several documents to show and prove fraud, and the first of such was the November 5, 2024, letter from Irwin Ast law firm, sent to Wal-Mart Claims Services requesting the preservation and the opportunity to inspect all evidence relating to Plaintiff's accident *(See E-21)*.

### *Proof of a conspiracy between Wal-Mart and Plaintiff's legal counsel*.

[91] On November 7, 2024, Wal-Mart Claims Services sent a letter to Irwin Ast law firm asserting that Wal-Mart was informing Irwin Ast that if it is determined that a payment or settlement of the claim is appropriate then their settlement would include both a confidentiality clause and a hold harmless indemnification clause *(See E-22,23,24)*.

[92] And further Wal-Mart stated in the November 7, 2024, letter that they had taken reasonable action to collect and preserve information relevant to the incident and that if Irwin Ast had any questions concerning the matter please feel free to contact Wal-Mart Claims Services and this was in November of 2024, and Irwin Ast and Rubenstein law firm want Plaintiff to believe and accept that all communications and transactions between them and Wal-Mart ended on the afore stated date of November 7, 2024, and that they did not receive all the Wal-Mart's collected and preserved information related to Plaintiff's accident, and this is more likely the reason for terminating Plaintiff's case, which amounted to fraudulent conduct *(See E-22,23,24)*.

[93] Here at this point Wal-Mart was more than willing to negotiate some type of payment or settlement, yet Irwin Ast law firm claimed in their February 26, 2025, letter of terminating representation, that after reviewing Plaintiff's entire file that Irwin Ast and Rubenstein law firm regretted to advise Plaintiff that they had determined it was not feasible for their firms to pursue a claim against Wal-Mart or any other party in connection with the incident *(See E-16)*.

[94] This is clearly a false and fabricated document because Irwin Ast law firm alleged that they reviewed Plaintiff's entire file and decided that it was not feasible to pursue the case, but the question must be asked what entire file? Since the only information that they were supposed to have in their possession was sent to them by Plaintiff and it was sufficient at the inception of this process but now it's not practical, this is proof positive that Irwin Ast have obtained information from Wal-Mart and vice versa.

[95] In Mr. Irwin Ast's legal counsel response to Plaintiff Florida Bar complaint, he alleged that a medical provider in Tampa, Florida was unable to treat Plaintiff because too much time elapsed between the date of the injury at Wal-Mart and Plaintiff's initial treatment but this reason was not given in the Irwin Ast' termination letter and this also proves total incompetence or a conspiracy to commit fraud because a rational minded attorney should be very cognizant of the time factor in treatment of a patient or client.

[96] Florida law clearly establishes the proper procedures for attorneys to decline and terminate cases, but Irwin Ast failed to comply with such laws by illegally terminating Plaintiff's case without a legitimate reason *(See E-25,26)*.

[97] And pursuant to **_RRFB 4-1.16(d)_**, titled; protection of client's interest; which asserts, upon termination of representation, a lawyer shall take steps to protect a client's interest, such as giving reasonable notice to the client, allowing time for the employment of other counsel, surrendering papers and property to which the client is entitled.

[98] The Irwin Ast law firm violated all these principles and refused to provide Plaintiff with any of the requested documentation related to his case and Plaintiff had to go to the extent of filing a complaint against them with the Florida Bar and only at that point did Irwin Ast law firm decide to partially cooperate by providing some files of Plaintiff case. But according to **_RRFB 4-1.4(a)(4)_**, titled; communication. which states, a lawyer shall promptly comply with reasonable requests for information.

[99] On December 16, 2024, Plaintiff responded to Mrs. Nichole Garcia text message, where she was misrepresenting herself as his attorney and Plaintiff requested copies of all the documents that he had signed but Irwin Ast law firm refused to comply *(See E-12,26)*.

[100] Then on February 5, 2025, Mrs. Garcia sent Plaintiff a text message questioning him concerning his medical treatment plan and at that time Plaintiff asked her to provide him with updates of the status of the case and the law firm of Irwin Ast failed to comply with that request *(See E-13,14)*.

[101] And finally, on February 28, 2025, Plaintiff sent an email to Irwin Ast law firm main email address, which is, irwin@astlawfirm.com *(See E-17)*, and attached a request for client's case files information and a few attached exhibits and this request was also ignored, therefore, Plaintiff filed an action with the

Florida Bar to demonstrate and prove that Irwin Ast intentionally violated these laws for fraudulent profitability.

### *Defendants conspire with the Court to intentionally cause delay in the case.*

[102] During the pendency of case number *25-CA-006909*, certain action was taken, and statement made by the Court, the significance of which was not fully manifested until Plaintiff filed a motion on September 16, 2025, and it being denied within minutes of the document being filed in the HCCC *(See E-27)*.

[103] Due to the Defendant's ability to corrupt the judicial system, this case has seen several judges recuse themselves, starting with the inception of this case where Judge Thomas removed herself from presiding over its affairs on January 22, 2025, and on August 21, 2025, Plaintiff filed a motion requesting a JAWS hearing and on August 22, 2025, Judge Daniel granted that motion and ordered a mandatory case management conference.

[104] Then on September 2, 2025, the Defendants forced Judge Daniel to recuse herself moments before the hearing was to start, and the case was reassigned to Judge Jennifer Gabbard on that same date, and Plaintiff filed a motion to request a JAWS hearing with the HCCC clerk of the court on September 5, 2025 and emailed the request to the Defendants *(See E-28,29)*.

[105] After not receiving a response from Judge Gabbard's judicial assistant regarding the motion for a JAWS hearing, Plaintiff filed a cover letter and a motion requesting an emergency hearing on September 16, 2025, and on that same day, within minutes of Plaintiff filing that motion, Judge Gabbard denied that request, which demonstrated total disregard for the law and racist potential *(See E-27)*.

{27}

[106] By Judge Gabbard denying Plaintiff's motion for an emergency hearing and then refused to address the issue for the request of a JAWS hearing, which was filed on September 5, 2025, and that the decision being contradictory and counterproductive to conflict resolution because the Defendants failed to respond to the summons and complaint and refused to file any pleadings with the Court.

[107] Then on September 18, 2025, Plaintiff filed a motion to disqualify and a motion to set a hearing date, to give Judge Gabbard the opportunity to relieve herself from the duty of presiding over this case, since she was demonstrating that she was not qualified to make a timely and just decision.

[108] When Plaintiff filed the motions on September 18, 2025, the Clerk of the Court refused to scan the motion to set a hearing date, but only scanned the first page and that was not by accident, so Plaintiff placed copies of all the documents that he filed with the Court into Judge Gabbard's drop box on the 5th floor and sent copies to all the Defendants and Judge Gabbard judicial assistance *(See, E-30,31,32)*.

[109] Then on September 22, 2025, Judge Gabbard's judicial assistant sent Plaintiff an email asking him to re-send his email and to copy all the opposing counsel, so that the judicial assistant could respond to those individuals, which makes no logical or legal sense because the purpose of copying the opposing parties is only for proof of service, not for judicial communications *(See E-32)*.

### *The Court refused to grant Plaintiff a hearing.*

[110] The following rules and historical facts were used to persuade Judge Gabbard into granting Plaintiff's hearings, which are based on law and not some case information, which was the method that the Court used to deny Plaintiff's

{28}

motion for an emergency hearing and refused to acknowledge the fact that this is a time sensitive lawsuit.

[111] In pursuance of F*RCP 1.610(a)(1)(A)(B)*, titled: *Temporary Injunction,* which states, a temporary injunction may be granted without written or oral notice to the adverse party only if:

    a) It appears from the specific facts shown by affidavit or verified pleading that the immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

    b) The movant's attorney certifies in writing any efforts that have been made to give notice and the reasons why notice should not be required.

[112] The above-reference law gives the Court the ability to intervene in an action when an opposing party refuses to cooperate with the governing procedures, especially when the Defendant intentionally abuses the judicial process by filing a motion for extension of time on August 13, 2025, and then requesting 20 days to respond to Plaintiff's summons and complaint and allowed that time to elapse and refuse to file any pleadings into the Court or even request a hearing on their motion after Plaintiff opposed such by filing for default.

***The Defendants failed to respond to Plaintiff's summons and complaint.***

[113] Plaintiff will provide detailed information on the history of this lawsuit and show and prove that default judgment should have been granted from the inception of these proceedings.

[114] On July 21, 2025, Plaintiff filed this action with the Hillsborough County Circuit Court (HCCC), and the summons were issued on that date, then the

{29}

Defendants were served the summons and complaint on July 24, 2025, *(See E-33,34,35)*.

[115] A response or answer was due on August 13, 2025, but instead of complying with the demands of the pleadings the Defendants filed a motion for extension of time requesting 20 days to respond to the summons and complaint, knowing that there was no intention of making a good faith effort to honor their petition.

[116] Then on August 4, 2025, counsel Russomanno filed a notice of appearance for Irwin Ast and Nichole Garcia but failed to include Rubenstein law firm under his representation until August 21, 2025, where Mr. Russomanno filed a notice of appearance, which means that Rubenstein law firm failed to meet the August 13, 2025, deadline to answer the summons and complain and was in default.

[117] And further proof that Mr. Russomanno did not follow the Court proper procedure and correctly represent his client's best interest, is the fact that when Mr. Russomanno filed the motion for an extension of time on Wal-Mart behalf, he erroneously neglected to include any of his clients in that motion thereby, automatically forfeiting their right to defend in this matter.

[118] The counsel for the Wal-Mart's Defendants filed a notice of appearance on August 14, 2025, and on that same day Plaintiff filed a request for entry of default and a motion for default judgment with accompanying affidavits, which are documents opposing the Defendants of Wal-Mart's motion for an extension of time, due to that motion being filed without contacting or conferring with Plaintiff and violating Florida law, mainly ***FRCP 1.202(a)***.

[119] Titled; Conferral Prior to Filing Motion; subtitled; *Duty*; which states, before filing anon-dispositive motion, the movant must confer with the opposing party in

{30}

a good faith effort to resolve the issues raised in the motion.

[120] Then on August 21, 2025, Plaintiff filed a motion for a JAWS hearing because the Defendants failed to respond to the summons and complaint or request a hearing on their motion for extension of time, since Plaintiff was opposing such and on August 22, 2025, the HCCC Judge ordered a mandatory case management conference for Plaintiff motion for default judgment set for September 2, 2025.

[121] And further on August 22, 2025, Wal-Mart and the other Defendant's counsel sent Plaintiff emails making vicious threats to impose sanctions on Plaintiff for filing a motion for a JAWS hearing, which complied with Florida rules, and since neither counsel took the initiative to request a hearing or file any pleadings on their client's behalf, Plaintiff was compelled to perform that duty *(See E-36,37)*.

[122] According to ***FRCP 1.440(b)***, titled; **Motion for Trial;** which asserts, for any case not subject to rule 1,200 or rule 1.201, or for any case in which any party seeks a trial for a date earlier than the projected or actual trial period specified in a case management order, any party may file or serve a motion to set the action for trial.

### The opposing parties' counsel committed perjury.

[123] The above-referenced rule clearly removes any argument of failure to comply because the Trial Judge ordered a mandatory hearing not because Plaintiff requested such but rather for the multiple errors and inconsistencies of both parties' counsel, who allowed Mr. Russomanno to file a motion for extension of time for Wal-Mart Defendants but excluded his own clients and not confer with Plaintiff.

[124] Then Mr. Russomanno filed a notice of appearance for Rubenstein Law firm

{31}

on August 21, 2025, without filing any type of pleadings explaining why his client failed to respond to the summons and complaint deadline, which was August 13, 2025.

[125] After the Defendant's counsel made hostile threats against Plaintiff, to sanction him if Plaintiff did not withdraw his motion for a JAWS hearing and they saw it having no effect on Plaintiff's determination to continue to pursue the proper course action, the Defendants began pressuring the Trial Judge, who eventually disqualified herself on the date of the hearing, which was September 2, 2025.

[126] And on September 5, 2025, Plaintiff filed a second motion to request a JAWS hearing after the case was resigned to Judge Jennifer Gabbard but according to Court records and the case management order Judge Cheryl K Thomas was originally assigned to this case and she also recused herself from the case, which proves that pressure is applied to all judges that handle any of Plaintiff's civil actions.

[127] Plaintiff sent an email with an attached copy of a request for a JAWS hearing to Judge Gabbard' judicial assistant Mrs. Paine on September 10, 2025, and Mrs. Paine sent Plaintiff a response on September 11, 2025, instructing him to send copies to all opposing counsel, in which Plaintiff complied by forwarding the information *(See E-38,39,40,41)*.

[128] Then later, on September 11, 2025, Mr. Russomanno sent Plaintiff an email, where he was attempting to forcibly give instructions on how to properly serve documents but failed to examine himself for the misrepresentation of his own clients by causing them to go into default *(See E-42)*.

{32}

[129] Plaintiff responded to Mr. Russomanno email by sending all opposing parties' counsel a copy of the request for a JAWS hearing on September 11, 2025, *(See E-41,42)* but that did not satisfy the unauthorized requirements issued by Mr. Russomanno, so, Plaintiff received a belligerent email from the afore stated attorney, giving orders of what Plaintiff should be doing and that action violates the code of conduct rules of Florida *(See E-41)*.

## CAUSE OF ACTION – 1 – NEGLIGENCE

### *Negligence of exacerbating personal injuries*

[130] Plaintiff was initially injured in a slip and fall accident at a Wal-Mart store located in Tampa, Florida, who had previously agreed to take responsibility for the damages that he incurred by asserting that they had reached a decision in the matter, after reviewing all available evidence but later changed its course of action and begin to cause delay in the process, thereby failing to perform its required duty *(See E-5,6)*.

[131] Then Plaintiff attempted to use the V.A. for medical services because he lacked other medical insurance and was experiencing severe pain and needed to know the extent of the damage before accepting any kind of offer from the Defendants but based on information Plaintiff received from an outside medical person, who stated that Wal-Mart was responsible for Plaintiff medical needs after his injuries but Wal-Mart refused to assist Plaintiff with any medical care even after seeing Plaintiff struggling with the V.A. for medical services, which amounts to failure of duty to care which placed a legal obligation to act with reasonable care to avoid harm to others *(See E-2,3,4)*.

[132] But due to the malicious and retaliatory conduct of the V.A. officials, who intentionally conspired to deny Plaintiff the necessary medical care, that was required, for almost a year and deliberately impeded Plaintiff's civil action against Wal-Mart who then purposefully took advantage of Plaintiff's situation with the V.A. and Plaintiff inability of forcing Wal-Mart to the negotiating table to reach a reasonable settlement, therefore, are negligent in their behavior and violated the following elements of said cause of action *(See E-2,3,4,7,8,9,10)*

[133] And further because of the Rubenstein and Irwin Ast law firms' conspiratorial actions of illegally sharing Plaintiff's medical information with Wal-Mart and intentionally attempting to delay the process to cause the expiration of the statute of limitations and for failure to properly represent Plaintiff, their behavior has caused irreversible damage and therefore those law firms violated the following elements of negligence:

## *DUTY OF CARE:*

*The Defendants have a legal obligation to act with reasonable care to avoid harming others.*

[134] Wal-Mart have the responsibility and duty toward their customers or visitors when they are invited onto their property, to uphold a standard for care that should be practiced toward the customer to protect them from unnecessary risk or harm. But after Plaintiff accident Wal-Mart failed to call for emergency assistance because they did not want to be responsible for Plaintiff medical bills and then forced Plaintiff into signing and filling out an incident report knowing that he was injured and confused and that the information obtained would be used to deny Plaintiff not only medical services but also any compensation for medical expenses

{34}

and damage, which was intentionally done to cause severe harm *(See E-1)*.

[135] On December 16, 2023, Plaintiff entered a Wal-Mart store, produce section where he was being escorted by a Wal-Mart associate to a particular area looking for a certain item when Plaintiff slip and fell on what appeared to be a smashed fruit or vegetable and the associate immediately called the manager, who informed him to promptly clean up the area, so that Plaintiff could not take pictures of the incident site, but the whole event was video recorded and Wal-Mart claimed that this information is preserved, yet they refused to resolve the problem, which violates the duty of care *(See E-22,23,24)*.

[136] On February 27, 2025, Plaintiff contacted Irwin Ast law firm to request the full name of the person who claimed that she was legally representing Plaintiff, who was known by the identity of Mrs. Nichole but was a paralegal perpetrating a fraud against Plaintiff, the Courts and the State of Florida by mispresenting herself as a certified attorney and thereby failed in her duty to act with reasonable care to protect Plaintiff from severe harm *(See E-12,26)*.

[137] Plaintiff provided Irwin Ast law firm with personal information and medical documents from the V.A. which Plaintiff believe that Irwin Ast shared with Wal-Mart and Plaintiff also informed the above stated law firm that the V.A. refused to give the necessary medical care and was told by such that they would furnish those medical needs but purposely reneged on those services and cause the exacerbation of the pre-existing injuries from the Wal-Mart's accident, which is a failure in their obligation with reasonable care to avoid harm to Plaintiff *(See E-2,11,12,13,14)*.

[138] Plaintiff asked paralegal Mrs. Nichole Garcia for his case files on several occasions by way of email, but she refused to relinquish those documents even

{35}

though Plaintiff had sent Irwin Ast law medical and personal information that was required by law to be returned upon request and then terminated their services without notification or justification and thereby causing Plaintiff unnecessary harm, violating their duty to reasonably act with care to avoid damages *(See 12,13,14)*.

## *BREACH OF DUTY*:

### *Action fails to meet the required standard of care*.

[139] The failure to uphold the duty of care which resulted the in negligence or medical malpractice by the V.A. but the adverse outcome for Plaintiff by Wal-Mart's inaction to resolve the matter in a timely manner is a breach of duty and a failure to meet the required standard of care which, Wal-Mart can and should be held liable for the damages that resulted from those failures *(See E-2,3,4,7,8,9,10)*.

[140] Specifically, Wal-Mart's maintenance associates are tasked with the specific responsibility of performing safety sweeps of high traffic areas and cleaning up spills throughout the day but in this instance, a high traffic area was left unattended during the peak business hours and no one noticed this problem, yet Wal-Mart have video footage of how these products was dropped on the floor and how long they were there and this was most likely the reason for Wal-Mart quickly coming to a decision to resolve the matter and sending Plaintiff letters informing him of such and therefore, they failed to meet the required standard of care *(See E-22,23,24)*.

[141] Irwin Ast law firm terminated Plaintiff case on February 27, 2025, without notifying him of such and the only way that Plaintiff discover the case was closed is when Plaintiff called Irwin Ast law firm to request his case files on the above stated date and that behavior pattern qualify as a breach of duty because it did not

meet the standard of care that was necessary to allow Plaintiff the required time to hire a new attorney to compensate for the lost time and work *(See E-16)*.

[142] When Plaintiff signed the release of information documents sent to him by Irwin Ast law firm on October 25, 2024, Plaintiff discovered in the fee sharing agreement that he was being represented by two law firms, which were Irwin Ast and Rubenstein law firms, yet neither of those entities ever made any type of contact with Plaintiff, which violated the proper client-attorney relationship, and this action was a breach of duty *(See E-11,12,13,14,17,18)*.

## *CAUSATION:*

### *Defendant's breach of duty caused the Plaintiff's injury and losses.*

[143] The actions by the V.A. officials may have caused the tort claim issues because of the negligence of those officials, which lead to the exacerbation of those injuries suffered by Plaintiff from the Wal-Mart slip and fall accident but the question that must be asked, is whether the harm suffered would have occurred if Wal-Mart would have maintained their store safety policies and kept a daily record of the housekeeping activities, which amounted to and demonstrated negligence and caused Plaintiff losses and injuries.

[144] Wal-Mart adopted a slip and fall policy titled; slip, trip and fall guidelines, which required their employees to keep an eye out for safety-type issues in the area that they worked, so by this failure of Wal-Mart employees to follow the established protocols it caused tremendous damage to Plaintiff because he works out and ride a bike and the slip and fall accident has interfered with those activities.

[145] But according to the incident report filed by Plaintiff where he stated that the

{37}

associate who witnessed the slip and fall accident was stocking the produce section and Plaintiff slipped on some type of produce so, either the associate dropped the substance on the floor, or he failed to keep an eye out for a safety-type issues and this is a breach of duty because whichever option is correct, this associate was negligent in his responsibilities and assisted in the injuries sustained by Plaintiff *(See E-1)*.

## *DAMAGES*:

*Plaintiff was harmed or injured as a result of the Defendant's actions, therefore causing damage.*

[146] Due to the misconduct of the V.A. officials, and the failure of Wal-Mart, Plaintiff has suffered harm in the form of personal injuries and mental anguish and because both parties failed to exercise reasonable care in the circumstances surrounding the effects of the slip and fall accident, which has left Plaintiff with limited medical care, limited financial potential or a valid legal recourse, therefore Plaintiff is forced to litigate this action with insufficient time constraints.

[147] Plaintiff lives and functions on a fixed income and is living in the senior citizen status and due to the slip and fall accident Plaintiff has not been able to take on any temporary work to help compensate for the financial short falls and Plaintiff had to reduce his physical training due to the constant pain and the inability to get proper medical care and that harm or injury has caused severe damage.

[148] Irwin Ast and Rubenstein law firms failed to communicate with Plaintiff on any level and appointed a paralegal as a legal representative for him and has lost valuable time and shared confidential information with Wal-Mart, which caused irreparable damage to Plaintiff's case and his personal wellbeing *(See E-12,26)*.

{38}

## CAUSE OF ACTION – 2 – CONSPIRACY

### *The Defendants conspired to conceal information and modify documents.*

[149] On December 16, 2023, Plaintiff had a slip and fall accident in one of Wal-Mart's stores and immediately reported it to the store manager who conspired with the corporate officials to alter critical information in the incident report by intentionally leaving off the witness personal and contact information and the official statement of what the witness observed in the incident and what actions Wal-Mart took to secure the accident area *(See E-1)*.

[150] And on December 18, 2023, Plaintiff received an email from a Wal-Mart case manager, Mr. Kevin Bolen attempting to get Plaintiff to communicate with him by means of a telephone call to discuss the slip and fall accident but Plaintiff informed the above stated person via email on December 20, 2023, that Wal-Mart had a greater knowledge of the incident than Plaintiff because they had video footage and witnesses, *(See E-2,3,4)* and further Plaintiff provided medical documents to help Wal-Mart reach a feasible resolution, so it appears that Wal-Mart was conspiring to entrap Plaintiff into saying or doing something that would cause the forfeit his right to sue *(See E-5,6,7,8)*.

[151] Plaintiff received several misleading letters from the Wal-Mart case manager, Mr. Bolen dated February 22, 2024, and March 7, 2024, who was asserting that Wal-Mart had made a final decision concerning Plaintiff's claim but failed to include that information in those letters but was constantly asking Plaintiff to call him to discuss the issue to bring the claim to a closure, which demonstrated a clear conspiracy between management and corporate to force Plaintiff into a compromising situation *(See E-5,6)*.

{39}

[152] And on April 24, 2024, Plaintiff sent an email to Mr. Kevin Bolen informing him of the fact that Plaintiff had received both of the above stated letters and that Plaintiff preferred not to communicate over the phone because he needed documentation to support and confirm all negotiation and at that moment Wal-Mart management and corporate conspired to cut off all lines of communications because they refused to provide the necessary evidence to validate their proposition *(See E-2,3,4)*.

[153] Plaintiff received an email from Wal-Mart case manager, Johnathan Baker on September 3, 2024, alleging that Plaintiff's claim had been transferred to his office and that Plaintiff needed to contact him as soon as possible and further stated that Wal-Mart did not have a medical payment provision and that Plaintiff needed to submit all medical records and bills to Wal-Mart for their consideration and that he was attaching a few letter explaining such for Plaintiff to review and this conspiratorial action was to lure Plaintiff into to providing Wal-Mart with incriminating evidence against Plaintiff *(See E-7,8)*.

[154] Then on September 4, 2024, Plaintiff sent Mr. Baker an email reminding him that Wal-Mart case manager, Kevin Bolen had already sent Plaintiff several letters alleging that the matter had been resolved and further Plaintiff requested a full explanation of the no payment provision because first Plaintiff had informed Wal-Mart that he was attempting to get medical care from the V.A. but was denied such services and secondly basically all medical expenses were pay for by the V.A. so, there was no payment records for Plaintiff to provide to Wal-Mart *(See E-7,8)*.

[155] Therefore, Wal-Mart management and corporate office were conspiring to deny Plaintiff any kind of compensation for his injuries by requesting medical

{40}

records and bills that they know do not exist because first the V.A. refused to provide the medical care that was needed, and secondly, Plaintiff was seeking damages caused by the slip and fall accident not to get medical expenses covered.

### *Fraudulent conduct of the retained law firms.*

[156] Plaintiff retained legal representation from the Irwin Ast and Rubenstein law firms on October 25, 2024, where they conspired to allow a paralegal, Mrs. Nichole Garcia, to acquire his personal and medical information and then delayed and refused any legitimate attorney's communications with Plaintiff throughout the entire period of retainment and thereby intentionally interfered with the time factor of the statute of limitations *(See E-11)*.

[157] Then on December 16, 2024, Irwin Ast and Rubenstein law firm intriguingly employed their paralegal (Mrs. Garcia) to send Plaintiff an email deceptively asking about his medical care knowing that Plaintiff was not receiving any such services and further allowing the paralegal to misrepresent herself as an attorney and give legal advice *(See E-12,26)*.

[158] And on February 5, 2025, Plaintiff received an email from Mrs. Garcia (paralegal) inquiring about his medical treatment again, after Plaintiff had notified Irwin Ast law firm that he was denied medical services from the V.A. and Mrs. Garcia behavior proves that Irwin Ast, Mrs. Garcia, Rubenstein and Wal-Mart were collaborating to hinder any real progress in Plaintiff's case and Plaintiff also requested information on the status of his case, in which Mrs. Garcia refused to provide *(See E-13,14)*.

[159] Plaintiff sent an email to Mrs. Garcia (paralegal) informing her of the fact that Irwin Ast and Rubenstein law firms have not been representing him in any

legitimate way and they failed to assist with medical needs but was constantly requesting information on Plaintiff treatment plan and therefore Plaintiff asked for all his case files again and to send them as soon as possible but was denied excess to that documentation, which demonstrated that the law firms had conspired with Wal-Mart to interfere with Plaintiff's case and to cause the expiration of the statute of limitations *(See E-12,13,14,16)*.

[160] After not receiving the case files, Plaintiff called Irwin Ast law firm on February 24 and 27, 2025, and was told that Irwin Ast law firm no longer represented Plaintiff and received a letter dated February 26, 2025, confirming such, by stating that after reviewing Plaintiff's entire case file Irwin Ast and Rubenstein law firms regretted advising Plaintiff that it was not feasible for their firms to pursue Plaintiff's claim against Wal-Mart, which was a conspiratorial effort to conceal information *(See E-16)*.

[161] And this was clear evidence that both law firms and Wal-Mart had conspired to share personal, medical and other documentation because according to Mrs. Garcia's December 16, 2024, email, where she stated that no law suit had been filed and no records or bills had been requested, so there was no entire case file for Irwin Ast and Rubenstein law firms to review and this proves that all the involved parties shared information and agreed to cease any further civil activities from Plaintiff *(See E-12)*.

[162] The real reason that Irwin Ast and Rubenstein law firms terminated Plaintiff's case is because he was requesting all his case files and the law firms did not want Plaintiff to discover the conspiracy between them and Wal-Mart in the process of sharing crucial information related to Plaintiff's claim, so on February

{42}

28, 2025, Plaintiff sent a final email with a request for client's case files with attached text messages between Plaintiff and the paralegal before filing an official complaint with the Florida Bar Association *(See E-17)*.

[163] Plaintiff received incriminating documents from Irwin Ast's legal counsel who was representing him in Plaintiff's Florida Bar Association complaint and was attempting to conspire to cover up the misdeeds of the employees of that law firm by having the paralegal (Mrs. Garcia) send Plaintiff a letter dated March 20, 2025, giving her full name, her official position and identifying her subordinate role, by using the pronouns of; our, we us, in which in previous communication Mrs. Garcia used the I, pronoun indicating that she was independent of any supervision *(See E-19,20)*.

[164] Attached to the March 20, 2025, letter was a few of Plaintiff's case file documents and one of them being a letter from Mrs. Garcia to Johnathan Baker, (Wal-Mart case manager), dated November 5, 2024, where Irwin Ast and this paralegal conspired to perpetrate a fraud against Plaintiff and Wal-Mart by claiming to legally be a representative of the aggrieved party and requesting that Wal-Mart preserve all evidence in their possession and feigning as if this was the first and only point of contact *(See E-21)*.

[165] Then on November 7, 2024, Wal-Mart case manager, Johnathan Baker sent a letter to Irwin Ast's physical address in Miami, Florida and not to the paralegal email address that was given in the March 20, 2025, letter to Mr. Baker, which proves a conspiracy between Wal-Mart and Irwin Ast employees and that there were more methods of communications other than what was presented *(See E-22,23,24)*.

{43}

[166] And further on March 20, 2025, Plaintiff received a response from Irwin Ast's legal counsel to Plaintiff's Florida Bar Association complaint, which is clear proof of guilt within itself, who made unfounded allegations such as there was no evidence of Mr. Irwin violating any laws, even though he never personally contacted Plaintiff during the retention period and had his paralegal giving legal advice and misrepresenting her position and this action demonstrated a conspiracy to conceal evidence *(See E-25,26, 27).*

**CAUSE OF ACTION – 3 – FRAUD**

[167] On December 16 ,2023, Plaintiff had a slip and fall accident in a Wal-Mart store and immediately reported such to the store manager who forced Plaintiff into giving a recount of the incident while in a confused state and seriously injured and intentionally falsified and fabricated the incident report by leaving off crucial information *(See E-1).*

[168] Plaintiff received several phone calls from Wal-Mart case manager Kevin Bolen, who eventually sent him an email dated December 18, 2023, trying to get Plaintiff to discuss the incident over the phone, which is deceptive practice because of the unreliability of documenting such calls *(See E-2,3,4).*

[169] Wal-Mart case manager, Mr. Kevin Bolen sent Plaintiff several fabricated letters dated February 22, 2024, and March 7, 2024, asserting that Wal-Mart had made a decision on Plaintiff's claim and that they would like to discuss the matter to bring the claim to a closure but refused to include that information in the email but was really attempting to coerce Plaintiff into phone communications to hinder any possible compensation *(See E-5,6).*

[170] On September 3, 2024, Plaintiff received a fabricated email from Wal-Mart case manager, Johnathan Baker alleging that Plaintiff's claim was transferred to him and that a decision had been made and that Wal-Mart was working to resolve reasonable related and medically necessary expenses and that Plaintiff should contact him at the earliest convenience, which means a phone conversation because Mr. Baker failed to put in writing what decision was made or why would Plaintiff need to discuss medical expenses that he does not have due to the V.A. covering those bills *(See E-7,8)*.

[171] Plaintiff retained the law firms of Irwin Ast and Rubenstein on October 25, 2024, and provided them with personal and medical documents, in which those firms fraudulently confiscated and shared with Wal-Mart *(See E-12)*.

[172] Then on December 16, 2024, Plaintiff received a text message from Nichole Garcia fraudulently claiming to be handling his case and requesting information and giving legal advice, which was outside the scope of a paralegal's duty and Plaintiff also requested his case files but was denied such *(See E-12)*.

[173] Mrs. Garcia sent Plaintiff another misleading text message dated February 5, 2025, requesting information and giving instructions but refusing to provide Plaintiff with updates or his case files *(See E-13)*.

[174] Then on February 14, 2025, Plaintiff sent Irwin Ast law firm a summary of the case, outlining its activities and requesting the case files once again *(See E-14)*, and after not receiving any type of response Plaintiff sent a complaint with all the attached text messages between Plaintiff and the representing paralegal (Mrs. Garcia), before filing an official complaint with the Florida Bar Association but the law firm failed to comply which perpetrated fraud against Plaintiff *(See E-17)*.

[175] Irwin Ast law firm sent Plaintiff a false and fabricated letter dated February 26, 2025, asserting that both Rubenstein and Irwin Ast were terminating services without giving any logical reason to do so, or allowing Plaintiff time to find alternative counsel and without both law firms signing the termination letter *(See E-16)*.

[176] On March 20, 2025, Plaintiff received a Fabricated letter from Mrs. Nichole Garcia identifying herself as a paralegal, in which she failed to do so in previous communications and attached to that letter was some of the requested case files documents that Irwin Ast law firm was forced to return after Plaintiff filed a complaint with the Florida Bar *(See E-19,20)*.

[177] Then Plaintiff received a falsified and fabricated exhibit from Irwin Ast's legal counsel, which was a letter sent to Wal-Mart case manager, Johnathan Baker apparently from Mrs. Garcia dated November 5, 2024, claiming to be representing Plaintiff and requesting the preservation of evidence *(See E-21)*.

[178] And further Plaintiff received another exhibit from Irwin Ast's legal counsel dated November 7, 2024, that was a response letter from Wal-Mart case manager, Johnathan Baker, who was confirming that Wal-Mart was preserving all relevant information but failed to demonstrate any follow-up actions, therefore the letter proves conspiracy and fraud *(See E-22,23,24)*.

[179] Finally in Irwin Ast's legal counsel response to Plaintiff complaint dated March 20, 2025, he alleged that Mr. Ast did not violate any laws with his conduct and that the law firm performed its duty properly and that Mrs. Garcia never represented herself as an attorney but failed to explain why neither law firm's attorneys never contacted Plaintiff throughout the retainment period *(See E-25,26)*

{46}

## CAUSE OF ACTION – 4 – RACE DISCRIMINATION

***The Defendants violated discriminatory civil rights laws.***

[180] Plaintiff was initially injured in a slip and fall accident at a Wal-Mart store located in Tampa, Florida, who had previously agreed to take responsibility for the damages that he incurred by asserting that they had reached a decision in the matter, after reviewing all available evidence but later changed its course of action and begin to cause delay in the process, due to racial bias *(See E-5,6).*

[181] Then Plaintiff attempted to use the V.A. for medical services because he lacked other medical insurance and was experiencing severe pain and needed to know the extent of the damage before accepting any kind of offer from the Defendants but based on information Plaintiff received from an outside medical person, who stated that Wal-Mart was responsible for Plaintiff medical needs after his injuries but Wal-Mart refused to assist Plaintiff with any medical care even after seeing Plaintiff struggling with the V.A. for medical services, which amounts to failure of duty to care and racial prejudice against Plaintiff *(See E-2,3,4).*

[182] But due to the malicious and retaliatory conduct of the V.A. officials, who intentionally conspired to deny Plaintiff the necessary medical care, that was required, for almost a year and deliberately impeded Plaintiff's civil action against Wal-Mart who then purposefully took advantage of Plaintiff's situation with the V.A. and Plaintiff inability of forcing Wal-Mart to the negotiating table to reach a reasonable settlement, therefore, were not only negligent but bias in their conduct *(See E-2,3,4,7,8,9,10)*

[183] And further because of the Rubenstein and Irwin Ast law firms' conspiratorial actions of illegally sharing Plaintiff's medical information with Wal-

{47}

Mart and intentionally attempting to delay the process to cause the expiration of the statute of limitations and for failure to properly represent Plaintiff, their behavior has caused irreversible damage and demonstrated racial hatred.

[184] But after Plaintiff accident Wal-Mart failed to call for emergency assistance because they did not want to be responsible for Plaintiff medical bills and then forced Plaintiff into signing and filling out an incident report knowing that he was injured and confused and that the information obtained would be use to deny Plaintiff not only medical services but also any compensation for medical expenses and damages, which amounted to intentional race discrimination *(See E-1)*.

*Plaintiff's legal counsel perpetrated racial crimes.*

[185] On February 27, 2025, Plaintiff contacted Irwin Ast law firm to request the full name of the person who claimed that she was legally representing Plaintiff, who was known by the identity of Mrs. Nichole but was a paralegal perpetrating a fraud against Plaintiff, the Courts and the State of Florida by mispresenting herself as a certified attorney and thereby violated Florida law and totally disregarded black people civil rights *(See E-12,26)*.

[186] Plaintiff provided Irwin Ast law firm with personal information and medical documents from the V.A. which Plaintiff believe that Irwin Ast shared with Wal-Mart and Plaintiff also informed the above stated law firm that the V.A. refused to give the necessary medical care and was told by such that they would furnish those medical needs but purposely reneged on those services and cause the exacerbation of the pre-existing injuries from the Wal-Mart's accident and thereby covertly attempted to promoted the concept of race inferiority by failing to provide the basic legal representation to their client *(See E-2,11,12,13,14)*.

{48}

[187] Plaintiff asked the paralegal, Mrs. Nichole Garcia for his case files on several occasions by way of email, but she refused to relinquish those documents even though Plaintiff had sent Irwin Ast law firm medical and personal information that was required by law to be returned upon request and then terminated their services without notification or justification and thereby causing Plaintiff unnecessary harm and treated Plaintiff completely different than that of a white client *(See 12,13,14)*.

[188] Irwin Ast law firm terminated Plaintiff case on February 27, 2025, without notifying him of such and the only way that Plaintiff discover the case was closed is when Plaintiff called Irwin Ast law firm to request his case files on the above stated date and that behavior pattern qualify as a breach of duty and a clear case of racism *(See E-16)*.

[189] Irwin Ast and Rubenstein law firms failed to communicate with Plaintiff on any level and appointed a paralegal as a legal representative for him, which caused a loss of valuable time and shared confidential information with Wal-Mart, which caused irreparable damage to Plaintiff's case and this action clearly demonstrated racial profiling *(See E-12,26)*.

[190] The real reason that Irwin Ast and Rubenstein law firms terminated Plaintiff's case is because he was requesting all of his case files and their contempt for darker people and further the law firms did not want Plaintiff to discover the conspiracy between them and Wal-Mart in the process of sharing crucial information related to Plaintiff's claim, so on February 28, 2025, Plaintiff sent a final email with a request for client's case files with attached text messages between Plaintiff and the paralegal before filing an official complaint with the Florida Bar Association *(See E-17)*.

{49}

[191] Plaintiff received incriminating documents from Irwin Ast's legal counsel who was representing him in Plaintiff's Florida Bar Association complaint and was attempting to conspire to cover up the misdeeds of the employees of that law firm by having the paralegal (Mrs. Garcia) send Plaintiff a letter dated March 20, 2025, giving her full name, her official position and identifying her subordinate role, by using the pronouns of; our, we us, in which in previous communication Mrs. Garcia used the I, pronoun indicating that she was independent of any supervision and that type of mindset showed racial bias *(See E-19,20)*.

## PRAYERS FOR RELIEF

Wherefore, Plaintiff prays for a judgment as follows:

[192] For general, specific, compensatory, incidental and consequential damages according to proof at trial, but in an amount not less than 4,000,000.

[193] That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damage caused by the Defendant's conduct.

[194] That the Court grant punitive damages for the Defendant's malicious and reckless indifferent conduct.

[195] That the Court grant Plaintiff all lost potential business revenue and employment wages, because Plaintiff had to litigate these cases without legal assistance and would have been entitled to enjoy those benefits, if not conspired on and retaliated against by the Defendants.

[196] That the Court grant Plaintiff the cost and expenses of litigation, including reasonable attorney fees, pursuant to Title VII and 42 U.S.C. 21 § 1988.

{50}

[197] That the Court grant Plaintiff all other relief the Court deems just and proper.

Respectfully submitted on this 27th day of October 2025.

Noel Vincent Thomas

14004 Nephi Place, Apt. 103

Tampa, Florida 33613

Tel: (813) 817-7667

Nlthms44@gmail.com

{51}